IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

METROPOLITAN LIFE § 
INSURANCE COMPANY, § 
 § 
Plaintiff, § 
 § Civil Action No. 3:16-CV-2524-D
VS. § 
 § 
MICHAEL WAYNE BATTLE II, § 
 § 
Defendant. § 

MEMORANDUM OPINION
AND ORDER

Plaintiff Metropolitan Life Insurance Company ("MetLife") moves for summary judgment against defendant Michael Wayne Battle II ("Battle") on claims for money had and received and unjust enrichment. Battle opposes the motion. For the reasons that follow, the court grants MetLife's summary judgment motion as to Battle's liability for money had and received, and denies the motion without prejudice as to damages.

I

MetLife offers life insurance to federal employees through its Federal Employees' Group Life Insurance policy ("FEGLI Policy"), issued to the U.S. Office of Personnel Management ("OPM").[1] OPM administers the FEGLI Policy in accordance with the Federal Employees' Group Life Insurance Act ("FEGLIA"). *See generally* 5 U.S.C. §§ 8701-16. The FEGLI Policy offers both Basic coverage—in which most federal employees are

---

[1] All facts are uncontested unless otherwise noted.

automatically enrolled—and Optional coverage—which employees must specifically elect. MetLife is required to pay FEGLI benefits when a beneficiary establishes a valid claim under FEGLIA. The FEGLI Policy also specifies that beneficiary payments are prioritized pursuant to FEGLIA's terms: first, to the employee's designated beneficiary; second, if there is no designated beneficiary, to the employee's surviving spouse; and, third, if neither is present, to the employee's child or children. *See* 5 U.S.C. § 8705.

Battle's father, Michael Wayne Battle ("Michael"), was a U.S. Postal Service ("USPS") employee. As a USPS employee, Michael had life insurance coverage through the FEGLI Policy. At the time of his death on August 23, 2015, Michael retained a total of coverage of $474,000 ("FEGLI Benefits")—$79,000 in Basic life insurance coverage and $395,000 in two of the Optional plans. Michael had not designated a life insurance beneficiary and had no surviving spouse.

In early September 2015 Battle submitted a claim for FEGLI benefits to MetLife under Michael's insurance coverage. Battle represented to MetLife that Michael was divorced and that he was Michael's only child. Based on Battle's representations, MetLife paid Battle a total of $458,815.00, subtracting a $15,342.09 payment under a funeral home assignment from the total FEGLI Benefits while adding $157.09 in delayed settlement interest.

Soon after MetLife paid the outstanding FEGLI Benefits to Battle, it received another claim for death benefits from Ashton Colby Thompson ("Thompson")—another son of Michael. MetLife also received paperwork from USPS indicating that Thompson was

another surviving child of Michael. MetLife then paid Thompson one half of the FEGLI Benefits, which it alleges is in accordance with the FEGLI Policy.

MetLife then informed Battle by letter that it had overpaid his claim, and it requested that Battle reimburse MetLife the sum of $237,081.18.[2] When Battle failed to respond, MetLife filed this lawsuit asserting claims for money had and received, fraud, conversion, and unjust enrichment under Texas law. MetLife now moves for partial summary judgment on its money had and received and unjust enrichment claims. Battle opposes the motion.

II

Because MetLife will have the burden of proof on its claims at trial, to be entitled to summary judgment, it "must establish 'beyond peradventure all of the essential elements of the claim[s.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). "This means that [MetLife] must demonstrate that there are no genuine and material fact disputes and that [it] is entitled to summary judgment as a matter of law." *GoForIt Entm't, LLC v. DiGiMedia.com L.P.*, 750 F.Supp.2d 712, 722 (N.D. Tex. Oct. 25, 2010) (Fitzwater, C.J.) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina*

---

[2]MetLife stated that "[t]his amount represents payment of $39,500 in Basic Life insurance[,] $5,000 in Option A — Standard life insurance, and $192,500 in Option B — Additional life Insurance minus the funeral assignment of $15,342.09 plus delayed settlement interest of $75.91." P. App. 14. Combining these figures, however, equals $221,733.82, not $237,081.18. MetLife offers no other calculations in its evidence or briefing.

*Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

The court will address together MetLife's money had and received and unjust enrichment claims.

A

"Money had and received is an equitable doctrine applied to prevent unjust enrichment." *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quoting *Miller-Rogaska, Inc. v. Bank One, Tex., N.A.*, 931 S.W.2d 655, 662 (Tex. App. 1996, no pet.)). "To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscious belongs to [the plaintiff]." *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 814 (Tex. App. 2012, no pet.). "'[A] cause of action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely at the inquiry, whether the defendant holds money, which belongs to the plaintiff.'" *Bank of Saipan*, 380 F.3d at 840 (quoting *Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951)). "A cause of action for money had and received is not based on wrongdoing but instead, 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 711 (Tex. App. 2006, pet. denied) (quoting *Amoco Prod. Co. v. Smith*, 946

S.W.2d 162, 164 (Tex. App. 1997, no writ)); *see also Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex. App. 2005, no pet.).

In accordance with several other courts, this court has held that Texas law does not confer an independent cause of action for unjust enrichment. *See Roach v. Berland*, 2015 WL 5097987, at *2 (N.D. Tex. Aug. 31, 2015) (Fitzwater, J.); *see also Hancock v. Chi. Title Ins. Co.*, 635 F.Supp.2d 539, 560 (N.D. Tex. 2009) (Fitzwater, C.J.); *Redwood Resort Props., LLC v. Holmes Co.*, 2006 WL 3531422, at *9 (N.D. Tex. Nov. 27, 2006) (Fitzwater, J.); *Chapman v. Commonwealth Land Title Ins. Co.*, 814 F.Supp.2d 716, 725 (N.D. Tex. 2011) (Lindsay, J.); *Argyle Indep. Sch. Dist. v. Wolf*, 234 S.W.3d 229, 246-47 (Tex. App. 2007, no pet.); *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App. 2002, pet. denied). Instead, unjust enrichment is "a theory of liability that a plaintiff can pursue through several equitable causes of action, including money had and received, but not as a separate and distinct claim." *Hancock*, 635 F.Supp.2d at 560; *see also Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*, 2007 WL 2729935, at *12 (N.D. Tex. Sept. 18, 2007) (Solis, J.) (explaining that "[a]nother basis for recovering under the theory of unjust enrichment is when a claim for 'money had and received' has been established"). Therefore, the court will address both of MetLife's claims as one claim for money had and received.

B

MetLife moves for summary judgment on its claim for money had and received. It contends that it mistakenly overpaid the FEGLI Benefits based on Battle's representations; that the facts of this case mirror those in past cases where MetLife has recovered under an

unjust enrichment theory; that Battle would receive an unentitled windfall were he allowed to keep the funds; and that Battle has continued to spend the FEGLI Benefits despite being notified by MetLife of the overpayment only 40 days after the original payment.

Battle opposes MetLife's motion based on two arguments. First, he maintains that MetLife has not met its evidentiary burden because it relies solely on self-serving affidavits. Second, he contends that MetLife's money had and receive claim fails based on the Texas voluntary payment rule.

1

To meet its summary judgment burden on its money had and received claim, MetLife must establish beyond peradventure that Battle holds funds that, in equity and good conscious, belong to MetLife. The court holds that MetLife has satisfied this burden.

The FEGLI Policy provides that, in accordance with FEGLIA, when the decedent has neither a designated beneficiary nor a surviving spouse, "the amount of group life insurance . . . in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, . . . to the child or children of the employee[.]" 5 U.S.C. § 8705 (West 2018). MetLife's summary judgment evidence[3] demonstrates that Battle submitted a claim for Michael's FEGLI Benefits in early September 2015. On the claim form, Battle represented

---

[3]As summary judgment evidence, MetLife relies on a declaration of a MetLife employee ("Kallaur Declaration"), USPS's certification of Michael's insurance status, Battle's Claim for Death Benefits, the overpayment letter MetLife sent to Battle, a declaration from its attorney, Battle's financial resources questionnaire completed in the course of litigation, and a 2017 appraisal notice for Battle's current home.

that he was the only child of Michael. When asked in "Part D" of the claim form to "list the child or children of all the deceased's marriages (include adopted children and children born out-of-wedlock)," Battle included only his name, age, relationship to Michael, and address. *See* P. App. 11. Based on this information, MetLife paid Battle the full FEGLI Benefits on September 17, 2015.

A MetLife employee's declaration ("Kallaur Declaration") avers that "[a]fter the FEGLI benefits were paid to Battle, MetLife received a claim form from another son of [Michael], Ashton Colby Thompson." P. App. 4. USPS also sent MetLife paperwork entitled "Preliminary Information to OFEGLI Regarding the Death of a Federal Employee." P. App. 7. This form indicates that both Battle and Thompson are Michael's survivors and sons. After receiving this information and Thompson's claim, MetLife paid Thompson what it considered to be one-half of the FEGLI Benefits due under the FEGLI Policy.

Battle maintains that the Kallaur Declaration is too conclusory to establish that MetLife "actually received a *valid* claim form for benefits from Ashton Colby Thompson." D. Response 2 (emphasis in original). But regardless whether Thompson submitted a valid claim, Battle's own right to all the proceeds under the FEGLI Policy was conditioned on "the establishment of a valid claim." 5 U.S.C. § 8705. His claim, however, was premised on the erroneous representation that he was Michael's only surviving child. Battle does not contest that he received all of the FEGLI Benefits as a consequence of this misrepresentation. Nor does Battle contest either the USPS documentation or the Kallaur Declaration's averments indicating that Thompson is another child of Michael. Texas courts have held that "money

- 7 -

paid to another under the influence of a mistake of fact belongs, in equity and good conscience, to the person who paid it." *Benson v. Travelers Ins. Co.*, 464 S.W.2d 709, 713 (Tex. Civ. App. 1971, no writ.); *see also Lyman D. Robinson Family Ltd. P'ship v. McWilliams & Thompson, P.L.L.C.*, 143 S.W.3d 518, 520 (Tex. App. 2004, pet. denied); *First Am. Title Ins. Co. v. Brett C. Moody Invs., LLC,* 2015 WL 1220733, at *4 (S.D. Tex. Mar. 17, 2015) (Rosenthal, J.) (citing *Benson*). Regardless whether Battle's representations on the claim form are considered innocent misstatements or fraudulent representations, there is no dispute that this error on the form led MetLife to pay Battle the entirety of the FEGLI Benefits.

Moreover, MetLife promptly notified Battle of the error and resulting overpayment. Texas courts sometimes refrain from granting relief on a claim for money had and received when the defendant has detrimentally relied or changed its position based on the money sought to be recovered. *See Edwards v. Mid-Continent Office Distribs, L.P.*, 252 S.W.3d 833, 839-40 (Tex. App. 2008, pet. denied) (explaining that "detrimental reliance is one of the factors that a trial court considers in balancing the equities in a claim for money had and received"). Here, however, Metlife sent Battle a letter on October 27, 2015 notifying him of the overpayment, i.e., fewer than 40 days after paying him the FEGLI Benefits. In the letter it explained:

> [t]he claim form you submitted advised [Michael] had 1 living child. We were advised after we paid you that [Michael] was survived by 2 living children. The proceeds due each living child would be 50% of the insurance benefits or $237,000 minus any funeral home assignment plus delayed settlement interest.

> When payment was made to you, we paid $474,000 instead of $237,000. This resulted in an overpayment to you.

P. App. 14. Battle continued to make significant purchases after receiving this letter.[4] Therefore, Battle cannot now maintain that he detrimentally relied on the overpayment. For these reasons, MetLife has demonstrated beyond peradventure that Battle holds funds that in equity and good conscious belong to MetLife.

2

The court now turns to Battle's voluntary payment defense. Battle contends that Texas' voluntary payment rule bars summary judgment on MetLife's claim for money had and received. He raises the voluntary payment rule for the first time in his response to MetLife's motion for summary judgment.

The voluntary payment rule is an affirmative defense on which Battle will have the burden of proof at trial. *See BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 778 (Tex. 2005); *Hunter v. PriceKubecka*, PLLC, 339 S.W.3d 795, 800 (Tex. App. 2011, no pet.). Battle must therefore affirmatively plead the defense. *See* Fed. R. Civ. P. 8. "An unpleaded affirmative defense cannot be raised for the first time in response to a summary judgment motion." *Jackson Nat'l Life Ins. Co. v. Dobbins*, 2018 WL 550516, at *7 (N.D. Tex. Jan. 25, 2018) (Fitzwater, J.), *appeal docketed*, No. 18-10347 (5th Cir. Mar. 22, 2018). *Cf. Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which

---

[4]For example, Dallas property records indicate he purchased a house in December 2016—more than one year after being notified of the overpayment.

- 9 -

is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.") (citation omitted). In federal court, such a defense is not necessarily waived by failing to assert it at the proper time, because "it is left up to the discretion of the trial court to determine whether the party against whom the unpleaded affirmative defense has been raised has suffered prejudice or unfair surprise." *Levy Garden Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 633 (5th Cir. 2013) (quotation marks and citation omitted). Nevertheless, "it is well established that a party cannot defeat summary judgment based on claims that have not been asserted as of the time the motion was filed." *Altec Capital Servs., LLC v. Weir Bros.*, 2013 WL 866193, at *4 (N.D. Tex. Mar. 8, 2013) (Fitzwater, C.J.) (citing *El Sereno, LLC v. City of Garland*, 2010 WL1741334, at *1 n.5 (N.D. Tex. Apr. 29, 2010) (Fitzwater, C.J.)). "This rule applies equally to affirmative defenses that have not been properly raised but that are relied on to defeat summary judgment." *Id.* The court therefore declines to consider Battle's arguments based on the voluntary payment rule.

3

Although MetLife has established beyond peradventure that Battle is liable on MetLife's claim for money had and received, it has not met its burden of proving beyond peradventure the specific amount of money that Battle must repay. MetLife has not provided the court with the terms of the FEGLI Policy—beyond § 8705's statutory text—or other summary judgment evidence indicating how FEGLI Benefits are divided among surviving children. Without this, the court is unable to determine as a matter of law the specific

amount of FEGLI Benefits due to each child—including Battle. While MetLife's October 27 letter does state that the proceeds due each of Michael's two children would be half of the full FEGLI Benefits, it cites no policy language to support this proposition. Therefore, the October 27 letter cannot establish the proper allocation of FEGLI Benefits beyond peradventure. Accordingly, the court declines to enter summary judgment as to the amount of damages.

* * *

For the reasons explained, the court the court grants MetLife's summary judgment motion as to Battle's liability for money had and received, and it denies the motion without prejudice as to damages.

**SO ORDERED**.

July 17, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE